TRAVIS F. CHANCE, ESQ., Nevada Bar No. 13800
tchance@bhfs.com
EMILY L. DYER, ESQ., Nevada Bar No. 14512
edyer@bhfs.com
BROWNSTEIN HYATT FARBER SCHRECK, LLP
100 North City Parkway, Suite 1600
Las Vegas, Nevada 89106
Telephone:    702.382.2101
Facsimile:     702.382.8135

*Attorneys for Defendant*
*South Doll Limited Partnership*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| KINGBIRD VENTURES, LLC,<br><br>        Plaintiff,<br>v.<br><br>SEAN DOLLINGER AKA YAAKOV LEVTOV; DOLLINGER INNOVATIONS INC.; DOLLINGER HOLDINGS LLC; LQR HOUSE, INC.; LQR HOUSE LIMITED; TAMARA SIMON DOLLINGER AKA TAMARA ROSE SIMON; KUMAR ABHISHEK; ALEXANDRA HOFFMAN; JACLYN HOFFMAN; SHAWN KATTOULA; ANGELA KATTOULA; JAMES O'BRIEN; YILIN LU; LINJUN CHEN; JING LU; HONG CHUNG YEUNG; KBROS, LLC; COUNTRY WINE & SPIRITS, INC.; SSQUARED SPIRTS LLC; ALTERNATE INVESTMENTS CAPITAL LLC; X-MEDIA, INC.; SOUTH DOLL LIMITED PARTNERSHIP; 1347608 B.C. LIMITED CORP.; JAY DHALIWAL; JAMES HUBER; CWS CARES ASSOCIATION; LITTLE WEST GIVES ASSOCIATION; DOES 1-10; AND ROE ENTITIES 1-10,<br><br>        Defendants. | CASE NO.<br><br>**(Clark County District Court Case No. A-25- 922959-B)**<br><br><br><br>**DEFENDANT SOUTH DOLL LIMITED PARTNERSHIP'S NOTICE OF REMOVAL OF CIVIL ACTION**<br><br>**Complaint Filed: July 11, 2025** |

**TO: PLAINTIFF AND ITS ATTORNEYS OF RECORD AND TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEVADA:**

    **PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441 and 1446, Defendant South Doll Limited Partnership ("South Doll") hereby removes the above-captioned action to this Court

34810951.3

from the Eighth Judicial District Court of the State of Nevada in and for the County of Clark.  In support of removal, Defendant states as follows:

## INTRODUCTION

1.  This case turns on substantial questions of federal law and is therefore removable from state court to federal court pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1331.  Plaintiff—a self-professed activist investor that buys shares in public companies only to use shareholder litigation to extract monetary settlements from its target companies—seeks the appointment of a receiver over LQR House, Inc. ("LQR") based on purported breaches of fiduciary duties, corporate mismanagement, and other alleged malfeasance by directors and officers of LQR.  A threshold and pivotal question in this case is whether Plaintiff has the requisite ten percent ownership interest in LQR to give it the necessary standing to seek the appointment of a receiver.  Indeed, Plaintiff also seeks a declaratory judgment from the Court that it owns enough shares to justify such extraordinary relief.  Exhibit A ¶¶174-177 (Ninth Cause of Action for Declaratory Relief, alleging that "a justiciable controversy has arisen between the parties hereto regarding the number of shares of LQR common stock now outstanding").  But, as Plaintiff itself acknowledges, that question depends entirely on the resolution of important issues of federal securities law and regulations.  Specifically, Plaintiff challenges whether various share issuances since May 9, 2025, pursuant to an SEC Form S-3 shelf registration were made in compliance with Section 10(a)(3) of the Securities Act of 1933 ("Securities Act") and SEC Rules 424, 415, and 512.  17 C.F.R §§ 230.424, 230.415, 229.512.  According to Plaintiff, if those share issuances failed to comply with applicable federal laws and regulations, then it has the requisite ten percent ownership interest to seek the appointment of a receiver.  If, on the other hand, those share issuances were compliant with federal laws and regulations, then Plaintiff does not own ten percent of the outstanding shares of LQR and cannot seek the appointment of a receiver for that reason alone.

2.  As a result, the Court cannot resolve whether Plaintiff even has standing to seek the appointment of a receiver and cannot adjudicate its declaratory judgment claim without interpreting and applying federal laws and regulations governing stock issuances.  Under well-settled law, this

is enough to establish original federal question jurisdiction over this entire action pursuant to 28 U.S.C. § 1331.

### THE STATE COURT ACTION

3. On July 11, 2025, Plaintiff Kingbird Ventures, LLC ("Plaintiff") commenced an action in the Eighth Judicial District Court of the State of Nevada in and for the County of Clark, captioned *Kingbird Ventures, LLC v. Sean Dollinger, et al.*, Case No. A-25-922959-B ("State Court Action"). A true and correct copy of the Verified Complaint and Petition to Appoint Receiver ("Complaint") is attached hereto as **Exhibit A**.

4. Plaintiff named over twenty defendants including LQR, LQR's Directors and Officers, "Related Entity Defendants," among others, (s*ee* Exhibit A ¶ 11) alleging corporate mismanagement, breaches of fiduciary duties, improper transactions, failure to disclose transactions, and unlawful distributions and/or fraudulent transfers.

5. While Plaintiff makes sweeping allegations regarding numerous transactions, it was not until July 18, 2025, that Diveroli Investment Group LLC, in conjunction with Plaintiff, filed a Schedule 13D with the Securities and Exchange Commission stating that as of June 27, 2025, they held 737,000 shares of LQR's common stock.[1] In other words, Plaintiff acquired shares of LQR's common stock right before it commenced the State Court Action, casting serious questions on its motives and purpose in bringing this litigation.

6. As the Complaint alleges, "this is an action for appointment of a temporary receiver." Exhibit A ¶ 7. The first three counts of the Complaint seek the appointment of a receiver under various provisions of Nevada corporate law. Under NRS 78.650 and 78.630, upon which Plaintiff's first two claims for appointment of a receiver rely, Plaintiff must own at least 10% of the outstanding shares to have standing to petition for a receiver. NRS 78.650 and 78.630.

7. Given this standing requirement, Plaintiff alleges that "[a] justiciable controversy has arisen between the parties hereto regarding the number of shares of LQR common stock now

---

[1] The timing of the acquisition of the total 737,000 shares is disputed by LQR. LQR was unable to confirm ownership of 737,000 shares until August 4, 2025.

1  outstanding," and seeks a declaration that 1,061,389 shares of LQR common stock are currently outstanding. Exhibit A ¶¶ 176-77; *id.* at *Prayer for Relief* 4.

8. The Complaint also brings claims for breaches of fiduciary duties, violation of the Nevada Racketeering Act, violation of NRS 90.570, civil conspiracy, and alter ego liability. *See* Exhibit A ¶¶ 132-77. It seeks various forms of injunctive and monetary relief, including, in addition to the appointment of a receiver, an order enjoining defendants from transferring any property, an order enjoining LQR and its directors and officers from making any corporate governance decisions or issuing stock, and damages including punitive, exemplary, and treble damages. Exhibit A at 36-37; *id.* at *Prayer for Relief*.

9. In tandem with the filing of the Complaint, Plaintiff also moved for (1) an *ex parte* Temporary Restraining Order and Preliminary Injunction ("*Ex Parte* Motion"); (2) an Order to Show Cause Why a Receiver Should Not Be Appointed; and (3) expedited discovery. Plaintiff sought to freeze the assets of LQR and all other defendants, restrain LQR and the other defendants from transferring any property, restrain LQR and its directors from making changes to the corporate governance and capital structure of the company, expedite the briefing and discovery schedule before the preliminary injunction hearing, and require the court to issue an order to show cause why a temporary receiver should not be appointed. In support of its motion, Plaintiff broadly alleged fraud and misconduct on the part of defendants, and alleged that harm would continue without the temporary restraining order and preliminary injunction. Plaintiff also alleged that it was likely to be successful on its claims to appoint a receiver.

10. On July 16, 2025, the state court denied in part Plaintiff's *Ex Parte* Motion without prejudice. The state court held that it would not provide *ex parte* relief given the complexity and large number of defendants. The state court further noted that a hearing would be held on all motions, including the appointment of a temporary receiver, on August 14, 2025.

11. Plaintiff filed a Renewed Motion for Injunctive Relief limited to Defendant LQR on Order Shortening Time (the "Renewed Motion") on July 24, 2025. In its Renewed Motion, Plaintiff limited its relief sought to just LQR in response to the court's denial of the *Ex Parte* Motion.

12. Notably, in the Renewed Motion, Plaintiff alleged various violations of federal securities law in support of its claims for injunctive relief and the appointment of a receiver. In particular, Plaintiff challenged LQR's "at-the-market" share issuances, which is a structure that permits publicly traded companies to sell shares directly into the market at prevailing market prices, alleging that LQR had issued an "untold" number of securities since May 9, 2025, and that those issuances were illegitimate and in violation of federal securities laws. Plaintiff alleged that LQR's violations of federal securities laws were causing "widespread confusion in the market," LQR's disclosure that it had seven million shares outstanding was a violation of SEC regulations and federal securities laws, and that LQR was making "an unlawful use of a reporting exception available when selling securities via an [SEC] S-3 prospectus." All of these allegations were based solely on federal securities laws with no mention of state law.

13. Plaintiff and LQR completed briefing the issue of whether Plaintiff was entitled to emergency relief on August 16, 2025. In Plaintiff's reply, Plaintiff again relied on federal securities law to establish it held the requisite 10% of outstanding shares to establish standing to petition for a receiver. Plaintiff contested LQR's share issuances through continuous offerings under Rule 415 and LQR's use of an SEC Form S-3 shelf registration. Plaintiff argued that LQR's share issuances after May 9, 2025, were "subject to rescission as a result of LQR's violation of SEC regulations" and submitted a declaration purporting to show why those issuances violated federal securities laws. Plaintiff also argued that LQR illegally issued shares under an SEC Form S-3, which is governed by SEC Rules, and failed to make proper disclosures under SEC Rule 515. Accordingly, Plaintiff argues that there are not 10,378,084 shares outstanding as LQR claims, but instead just 1,061,389. In support of its arguments, Plaintiff cites exclusively to federal securities laws and SEC Rules, and federal court case law interpreting them.

14. The state court held an initial hearing on the Renewed Motion on August 18, 2025. The state court did not decide the issue at this hearing and requested supplemental briefing. This timely notice of removal followed.

15. Attached hereto as **Exhibit B** are true and correct copies of all other process, pleadings, discovery, and orders received by South Doll in this action, including those filings referenced above.

## FEDERAL QUESTION JURISDICTION

16. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

17. Federal question jurisdiction exists over state law claims where, as here, "federal law is a necessary element of the [plaintiff's] claim for relief." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'r & Mfnr.*, 545 U.S. 308, 314 (2005) (explaining that a complaint alleging only violations of state law does not bar removal to federal court under federal question jurisdiction if "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities"); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374, 380 (2016) (explaining that the Exchange Act confers federal jurisdiction under the same "arising under" standard as 28 U.S.C. § 1331); *RH Kids, LLC v. Nat'l Default Servicing Corp.*, 2023 WL 1860930, at *4 (D. Nev. Feb. 9, 2023) (jurisdiction is proper even when "there is no federal cause of action in the complaint"); *Pee Pee Pop Tr. v. Fin. Indus. Regulatory Auth., Inc.*, 2019 WL 4723788, at *2 (D. Nev. Sept. 26, 2019) (finding federal jurisdiction "[a]lthough [plaintiff] invokes state law as the basis for relief").

18. Here, the Complaint turns on substantial questions of federal law. As noted above, Plaintiff cannot seek the appointment of a receiver under NRS 78.650 and 78.630 unless it owns at least 10% of LQR's outstanding shares. Plaintiff argues that *all* of LQR's share issuances since May 9, 2025, are illegal under federal securities laws and SEC Rules and thus subject to recission. Accordingly, Plaintiff alleges that there are 1,061,389, not 10,378,084, shares outstanding, and that it meets the 10% ownership threshold to establish standing.

19. The crux of Plaintiff's claims require both an interpretation and application of the Securities Act, the Securities Exchange Act of 1934 ("Exchange Act"), and SEC rules and regulations promulgated thereunder. In order to determine whether Plaintiff has standing to bring a claim for appointment of a receiver, the court must determine whether LQR's at-the-market share issuances after May 9, 2025, were legal under federal securities law and SEC Rules. In particular, the court must, among other things, interpret and apply the following core issues of federal securities law:

- Whether LQR properly followed the requirements for a continuous distribution of shares under SEC Rule 415 (17 CFR § 230.415), which permits publicly traded companies to register securities for sale on a continuous basis—known as a shelf registration—so long as certain conditions are met. Plaintiff has alleged that LQR violated the requirements for a shelf registration under Rule 415.

- Whether LQR properly completed, filed, and updated prospectuses in connection with their at-the-market shelf distributions in accordance with SEC Rule 424. 17 CFR § 230.424. SEC Rule 424 governs the filing of additional prospectuses once a registration statement has been filed with the SEC. *Id*. In particular, SEC Rule 424(b) governs whether and when a prospectus must be amended once it has been accepted by the SEC. *Id*. Plaintiff has alleged that LQR failed to amend or supplement its prospectuses after the at-the-market issuances.

- Whether LQR was entitled to issue shares under Instruction I.B.1 or Instruction I.B.6 of the SEC Form S-3 registration statement. Instruction I.B.6 applies when a company's public float is less than $75 million and prohibits the company from issuing more than one third of its public float under a shelf registration in a 12-month period. By contrast, Instruction I.B.1 applies to companies with a public float greater than $75 million and does not impose such a limitation. Plaintiff alleges that LQR was not entitled to issue shares under Instruction I.B.1 and that its issuances violated Instruction I.B.6.

- Whether LQR was required under SEC Rule 512 to file an amendment to the Form S-3 following the at-the-market issuances. 17 C.F.R § 229.512. SEC Rule 512 requires Form S-3 signatories to undertake to amend any Form S-3 in the event of fundamental changes. *Id*. As Plaintiff notes, SEC Rule 512 also includes exemptions to the amendment process "if the required information is either (i) filed in a report pursuant to section 13 or 15 of the Securities Exchange Act of 1934 that is incorporated by reference or (ii) the information is provided in a prospectus pursuant to Rule 424(b)." *Id*. Plaintiff contends that those exemptions do not apply and LQR failed to amend its Form S-3 when it was required.

20. Simply put, Plaintiff's claims cannot be resolved, nor can relief be granted, without applying federal law over which federal courts have original jurisdiction. Plaintiff's claims do not merely "implicate" federal law by passing reference to the laws, but rather the federal law is a "necessary element" of the relief that Plaintiff is seeking. *Cnty. of San Mateo*, 32 F.4th at 746; *Patterson v. Sapphire Resorts*, 2024 WL 5010152, at *5 (E.D.N.Y. Nov. 20, 2024) ("Federal jurisdiction does not exist simply because a state law claim may implicate a federal issue …. Instead, federal question jurisdiction arises only where the complaint raises issues of federal law." (citation omitted)).

21. Indeed, as noted above, Plaintiff's own filings underscore the substantial and disputed matters of federal law at issue. By way of example:

- In its Renewed Motion, Plaintiff argues "[t]he lack of a precise outstanding share count is causing widespread confusion among market participants and preventing Kingbird from being able to determine, for example, which set of SEC regulations it is subject to."

- On August 16, 2025, Plaintiff submitted a Supplement to its Renewed Motion disclosing the Declaration of Stephen Older. The Supplement clearly states "Mr. Older analyzed and relied upon recent annual and quarterly reports of Defendant LQR House, Inc. … filed with the SEC, and LQR's ATM facility documentation to

- evaluate whether LQR's continued share issuances complied with SEC regulations and securities laws."

- Plaintiff even went so far as to file a supplemental brief which addressed, among other issues, whether the additional shares issued by LQR House, Inc. were "approved by the SEC."

22. There is accordingly no dispute that Plaintiff's case turns on issues of federal law. And the federal question raised by Plaintiff's claim is both substantial and will not disrupt the federal-state balance. In fact, as Plaintiff acknowledges in its Renewed Motion, issues arising under federal law affect more than just the parties to this case and allegedly are "causing widespread confusion among market participants." Plaintiff's statement acknowledges the "federal interest" in regulating the securities market and providing clarity to market participants. *See Grable*, 545 U.S. at 313 (the federal issue must implicate "a serious federal interest in claiming the advantages thought to be inherent in a federal forum"); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 100 (2d Cir. 2001) ("the interpretation and application of the federal securities laws … [are] areas of undisputed strong federal interest"). Similarly, given the importance of federal regulation of securities to the federal forum, removal will not disrupt the federal-state balance. *Ashford v. Sessa Capital (Master), L.P.*, 2017 WL 11638258 at *4 (N.D. Tex. Jan. 23, 2017) ("there is no concern of disruption … [because] [q]uestions about application of SEC rules and duties that arise under the [Exchange] Act are traditionally in the federal domain").

23. Accordingly, because Plaintiff's Complaint concerns issues arising under the laws of the United States, this action is within the original jurisdiction of this Court under 28 U.S.C. § 1331. As such, this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a).

24. The Court also has supplemental jurisdiction over Plaintiff's remaining claims because they are so related to the issues arising under the laws of the United States such that they form a part of the same case or controversy under Article III of the United States Constitution. Plaintiff's claims all arise out of or concern the amount of outstanding shares of LQR. Thus, pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Plaintiff's other claim.

**COMPLIANCE WITH STATUTORY REQUIREMENTS**

25. South Doll was served with process on August 11, 2025, and removal is thus timely pursuant to 28 U.S.C. § 1446(b).

26. In accordance with the venue provisions of 28 U.S.C. § 1446(a), this Court is the district court for the district and division within which the State Court Action has been pending.

27. Attached hereto as **Exhibit A** is a true and correct copy of the Complaint, and attached hereto as **Exhibit B** are true and correct copies of all other process, pleadings, discovery, and orders South Doll has received to date in this action. Taken together, these documents constitute all process, pleadings, and orders South Doll as received in this action as required by 28 U.S.C. § 1446(a). As required by 28 U.S.C. § 1446(d), promptly after the filing of this Notice of Removal, South Doll will give written notice thereof to Plaintiff's attorney of record and shall file a copy of this Notice of Removal with the Clerk for the Eighth Judicial District Court in and for the County of Clark. A copy of the Notice to be filed in the State Court Action is attached hereto as **Exhibit C**.

28. All served Defendants join in and consent to this removal.

29. In accordance with 28 U.S.C. § 1448, after removal, any future defendants to be served shall be served "in the same manner as in cases originally filed in such district court."

30. South Doll attaches a completed Civil Cover Sheet hereto as **Exhibit D**.

31. Simultaneously with the filing of this Notice of Removal, South Doll files its Disclosure Statement pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and Local Rule 7.1-1.

**RESERVATION OF RIGHTS**

32. By removing this action, South Doll does not waive, and expressly preserves, any defenses that may exist.

33. South Doll also reserves the right to submit additional evidence in support of, and to amend, this Notice of Removal.

**WHEREFORE**, Defendant South Doll Limited Partnership respectfully gives notice of the removal of the State Court Action to the United States District Court for the District of Nevada, and respectfully requests that this Court assume jurisdiction over this action.

DATED: August 25, 2025.

                                              BROWNSTEIN HYATT FARBER SCHRECK, LLP

                                              BY: */s/ Travis F. Chance*
                                                   TRAVIS F. CHANCE, ESQ., NV Bar No. 13800
                                                   tchance@bhfs.com
                                                 EMILY L. DYER, ESQ., NV Bar No. 14512
                                                 edyer@bhfs.com

                                              *Attorneys for Defendant*
                                              *South Doll Limited Partnership*

**CERTIFICATE OF SERVICE**

Pursuant to Fed.R.Civ.P.5(b), and Section IV of District of Nevada Electronic Filing Procedures, I certify that I am an employee of BROWNSTEIN HYATT FARBER SCHRECK, LLP, and that the foregoing **DEFENDANT SOUTH DOLL LIMITED PARTNERSHIP'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT** was served via electronic service on August 25, 2025, through the Court's CM/ECF System, to the following:

JOEL E. TASCA, ESQ.
KYLE A. EWING, ESQ.
MADELEINE COLES, ESQ.
ALIX R. GOLDSTEIN, ESQ.
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV  89135
EMAILS:
joel.tasca@gtlaw.com
ewingk@gtlaw.com
madeleine.coles@gtlaw.com
alix.goldstein@gtlaw.com

*Attorneys for Plaintiff Kingbird Ventures, LLC*

　　　　　　　　　　　　　　　　　　　　　*/s/ Paula Kay*
　　　　　　　　　　　　　　　　　　　　　An employee of Brownstein Hyatt Farber Schreck, LLP

**INDEX OF EXHIBITS**

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Complaint and Appendix Volumes 1-4 |
| B | All other process, pleadings, discovery, and orders South Doll has received to date in this action |
| C | Notice to be filed in the State Court Action |
| D | Civil Cover Sheet |